**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

---

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

              Plaintiff,

              v.

ABSOLUT FACILITIES MANAGEMENT, LLC, d/b/a Absolut Care LLC, BILLIT ACCOUNTING AND INFORMATION TECHNOLOGY, LLC, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT ORCHARD PARK, LLC AND ABSOLUT AT ORCHARD PARK, LLC, d/b/a Absolut Care of Orchard Park, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT ALLEGANY, LLC, d/b/a Absolut Care of Allegany, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT AURORA PARK, LLC, d/b/a Absolut at Aurora Park and Absolute Care of Aurora Park, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT DUNKIRK, LLC, d/b/a Absolut Care of Dunkirk, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT EDEN, LLC, d/b/a Absolut Care of Eden, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT ENDICOTT, LLC AND ABSOLUT AT ENDICOTT, LLC, d/b/a Absolut Care of Endicott, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT GASPORT, LLC, d/b/a Absolut Care of Gasport, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT HOUGHTON, LLC AND ABSOLUT AT HOUGHTON, LLC, d/b/a Absolut Care of Houghton, ABSOLUT AT ORCHARD BROOKE, LLC, d/b/a Absolut Care of Orchard Brooke, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT SALAMANCA, LLC AND ABSOLUT AT SALAMANCA, LLC, d/b/a Absolut Care of Salamanca, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT THREE RIVERS, LLC AND ABSOLUT AT THREE RIVERS, LLC, d/b/a Absolut Care of Three Rivers, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT WESTFIELD, LLC, AND ABSOLUT AT WESTFIELD, LLC, d/b/a Absolut Care of Westfield.

              Defendants.

---

Civil Action No.: 1:18-cv-1020

**COMPLAINT**

**JURY TRIAL DEMANDED**

## NATURE OF THE ACTION

This is an action brought by Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission") under Title I of the Americans with Disabilities Act of 1990, as amended, Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and pregnancy and to provide appropriate relief to Charging Party Lisa Valentin and other similarly aggrieved individuals who were adversely affected by such practices.  As set forth with greater particularity below, the Commission alleges that Defendants Absolut Facilities Management, LLC, d/b/a Absolut Care LLC, Billit Accounting and Information Technology, LLC, Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC and Absolut at Orchard Park, LLC, d/b/a Absolut Care of Orchard Park, Absolut Center for Nursing and Rehabilitation at Allegany, LLC, d/b/a Absolut Care of Allegany, Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC, d/b/a Absolut at Aurora Park and Absolute Care of Aurora Park, Absolut Center for Nursing and Rehabilitation at Dunkirk, LLC, d/b/a Absolut Care of Dunkirk, Absolut Center for Nursing and Rehabilitation at Eden, LLC, d/b/a Absolut Care of Eden, Absolut Center for Nursing and Rehabilitation at Endicott, LLC and Absolut at Endicott, LLC, d/b/a Absolut Care of Endicott, Absolut Center for Nursing and Rehabilitation at Gasport, LLC, d/b/a Absolut Care of Gasport, Absolut Center for Nursing and Rehabilitation at Houghton, LLC and Absolut at Houghton, LLC, d/b/a Absolut Care of Houghton, Absolut at Orchard Brooke, LLC, d/b/a Absolut Care of Orchard Brooke, Absolut Center for Nursing and Rehabilitation at Salamanca, LLC and Absolut at Salamanca, LLC, d/b/a Absolut Care of Salamanca, Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC and Absolut at Three Rivers, LLC, d/b/a Absolut Care of Three Rivers, Absolut

Center for Nursing and Rehabilitation at Westfield, LLC, and Absolut at Westfield, LLC, d/b/a Absolut Care of Westfield (collectively, Defendants) failed to accommodate Charging Party and other similarly aggrieved qualified individuals with disabilities and instead terminated their employment because of their disabilities.  Defendants also engaged in unlawful employment practices on the basis of disability by (1) terminating employees who exhaust their leave under the Family and Medical Leave Act ("FMLA") or other approved medical leave; (2) prohibiting employees from returning to work unless they could do so without restrictions; (3) denying leave as a reasonable accommodation to probationary employees; (4) denying reasonable accommodations to employees with what Defendants deemed "temporary" disabilities; and (5) subjecting their employees to impermissible disability-related inquiries and medical examinations.

In addition, as set forth with greater particularity below, the EEOC alleges that Defendants terminated the employment of Charging Party and other similarly aggrieved individuals on the basis of pregnancy, and failed to accommodate women affected by pregnancy, childbirth, or related medical conditions while providing accommodations to non-pregnant workers similar in their ability or inability to work.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), and by Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were and are now being committed by Defendants within the jurisdiction of the United States District Court for the Western District of New York.

## **PARTIES**

3.      Plaintiff EEOC is an agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), and Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      Defendant Absolut Facilities Management, LLC, d/b/a Absolut Care LLC ("AFM"), is a limited liability company formed in the State of New York that owns and/or operates short-term rehabilitation, long-term skilled nursing care, and assisted living facilities in New York State.

5.      At all relevant times, Defendant AFM has conducted business directly and through its subsidiaries in the State of New York.

6.      Defendant Billit Accounting and Information Technology, LLC ("Billit") is a limited liability company formed in the State of New York that owns and/or operates short-term rehabilitation, long-term skilled nursing care, and assisted living facilities in New York State.

7.      At all relevant times, Defendant Billit has conducted business, both directly and through its subsidiaries, in the State of New York.

8.      AFM and Billit are headquartered in East Aurora, New York.

9.      Defendant Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC and Absolut at Orchard Park, LLC, d/b/a Absolut Care of Orchard Park ("Absolut Orchard

Park"), a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in Orchard Park, New York.

10.     Defendant Absolut Center for Nursing and Rehabilitation at Allegany, LLC, d/b/a Absolut Care of Allegany, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in Allegany, New York.

11.     Defendant Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC, d/b/a Absolut at Aurora Park and Absolute Care of Aurora Park, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in East Aurora, New York.

12.     Defendant Absolut Center for Nursing and Rehabilitation at Dunkirk, LLC, d/b/a Absolut Care of Dunkirk, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in Dunkirk, New York.

13.     Defendant Absolut Center for Nursing and Rehabilitation at Eden, LLC, d/b/a Absolut Care of Eden, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing facility located in Eden, New York.

14.     Defendant Absolut Center for Nursing and Rehabilitation at Endicott, LLC and Absolut at Endicott, LLC, d/b/a Absolut Care of Endicott, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in Endicott, New York.

15.     Defendant Absolut Center for Nursing and Rehabilitation at Gasport, LLC, d/b/a Absolut Care of Gasport, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in Gasport, New York.

16.     Defendant Absolut Center for Nursing and Rehabilitation at Houghton, LLC and Absolut at Houghton, LLC, d/b/a Absolut Care of Houghton, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in Houghton, New York.

17.     Defendant Absolut at Orchard Brooke, LLC, d/b/a Absolut Care of Orchard Brooke, a limited liability company formed in the State of New York, is an assisted care facility located in Orchard Park, New York.

18.     Defendant Absolut Center for Nursing and Rehabilitation at Salamanca, LLC and Absolut at Salamanca, LLC, d/b/a Absolut Care of Salamanca, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in Salamanca, New York.

19.     Defendant Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC and Absolut at Three Rivers, LLC, d/b/a Absolut Care of Three Rivers, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in Painted Post, New York.

20.     Defendant Absolut Center for Nursing and Rehabilitation at Westfield, LLC and Absolut at Westfield, LLC, d/b/a Absolut Care of Westfield, a limited liability company formed in the State of New York, is a short-term rehabilitation and long-term skilled nursing care facility located in Westfield, New York.

21.     Defendants have been continuously doing business in the State of New York and have continuously had at least 15 employees.

21.     Defendants operate as an integrated enterprise or single employer by virtue of their common management, common ownership, interrelation of operations, and centralized control of labor relations.

22.     Each Defendant is a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2), and each Defendant is an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7), and Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

23.     More than thirty days prior to the institution of this lawsuit, Charging Party Lisa Valentin filed a charge of discrimination with the Commission alleging violations of the ADA and Title VII by Defendants.

24.     On April 28, 2017, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that the ADA and Title VII were violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

25.     The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the unlawful employment practices described in the Letter of Determination.

26.     The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

27.     On November 8, 2017, the Commission issued to Defendants a Notice of Failure of Conciliation.

28.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### I.     General Allegations

29.     Since at least January 1, 2013, Defendants have engaged in unlawful employment practices on the basis of disability in violation of Sections 102 (a), (b)(5), (b)(6), (d)(3) and (d)(4) of Title I of the ADA, 42 U.S.C. § 12112(a), (b)(5), (b)(6), (d)(3), and (d)(4).  Such practices include:

a.      failing to accommodate Charging Party and other similarly aggrieved qualified individuals with disabilities and instead terminating their employment on the basis of disability;

b.      limiting the amount of leave available to qualified individuals with disabilities who may need a leave of absence as a reasonable accommodation ("maximum leave policy");

c.      denying leave as a reasonable accommodation to qualified individuals with disabilities who are within their probationary period ("no leave for probationary employees" policy);

d.      prohibiting qualified individuals with disabilities from returning to work unless they could do so without medical restrictions ("no restrictions" policy);

e.      refusing to accommodate employees with what Defendants deemed "temporary" disabilities ("no accommodation of temporary disabilities" policy); and

f.      subjecting employees to impermissible disability-related inquiries and medical examinations.

30.     The effect of the practices complained of in paragraph 29 above has been to deprive Charging Party and other similarly aggrieved qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities, as well as inflict emotional pain, suffering, and inconvenience to employees subjected to unlawful inquiries and medical examinations.

31.     Since at least January 1, 2013, Defendants have engaged in unlawful employment practices on the basis of pregnancy in violation of Sections 701(k) and 703(a)(1) of Title VII, 42 U.S.C. § 2000e(k) and 2000e-2(a)(1).  Such practices include:

a.     terminating the employment of Charging Party and other similarly aggrieved individuals on the basis of pregnancy; and

b.     failing to accommodate Charging Party and other similarly aggrieved women affected by pregnancy, childbirth, or related medical conditions while providing accommodations to non-pregnant workers similar in their ability or inability to work.

32.     The effect of the practices complained of in paragraph 31 above has been to deprive Charging Party and other similarly aggrieved women affected by pregnancy, childbirth, or related medical conditions of equal employment opportunities and otherwise affect their status as employees on the basis of pregnancy.

## II.     Charging Party Lisa Valentin

33.     Charging Party began working for Defendants at the Absolut Orchard Park facility as a food service supervisor on or about February 4, 2015.

34.     In or around August 2015, Charging Party began experiencing serious complications related to her pregnancy, including cardiomyopathy, abnormal bleeding, hypertension, and a herniated placenta.

35.     On or about August 1, 2015, Charging Party requested a leave of absence due to her pregnancy-related disability.

36.     By letter dated August 19, 2015, Defendants advised Charging Party that she was ineligible for FMLA due to the duration of her employment, but that she qualified for a 30-day medical leave of absence.  The letter explained that a medical leave of absence "guarantees retention of seniority, but does not guarantee a position upon return."

37.     In accordance with Defendants' "maximum leave" policy, Defendant Absolut Orchard Park notified Charging Party on or about September 24, 2015 that her 30-day medical leave of absence had expired and that her employment had been terminated.

38.     Charging Party advised Defendant Absolut Orchard Park that her next doctor's appointment was on September 28, 2015 and that she expected that her doctor would release her to return to work on that date with certain restrictions.

39.     In accordance with Defendants' "no restrictions" policy, Defendant Absolut Orchard Park responded that Charging Party could return to work only if she was able to do so without restrictions.

40.     Defendant Absolut Orchard Park confirmed Charging Party's termination by letter dated September 24, 2015.  The letter stated, in part, "You may return to work here if you can work with no restrictions within 30 days of the date of this letter.  At that time we will offer you whatever position may be available.  If you are unable to return within the 30 days you must wait 9 months to reapply."

41.     Charging Party was released to work on September 28, 2015, four days after her termination, with a 20-pound lifting restriction.  Charging Party did not notify Defendants because she was told she could not return to work with any restrictions.

42.     Defendant Absolut Orchard Park filled Charging Party's position on October 13, 2015.

**III.     Examples of Other Aggrieved Individuals**

43.     A Certified Nursing Assistant began working for Defendants at the Absolut Orchard Park facility on or about April 22, 2015.

44.     In or around May 2015, the Certified Nursing Assistant began experiencing serious complications relating to her pregnancy.

45.     On or about May 27, 2015, the Certified Nursing Assistant requested accommodations for her pregnancy-related disability in the form of a 20-pound lifting restriction.

46.     The Certified Nursing Assistant could have performed the essential functions of her position with such an accommodation.

47.     In accordance with Defendants' policies, Defendant Absolut Orchard Park denied the Certified Nursing Assistant's request for an accommodation.

48.     The Certified Nursing Assistant then requested a leave of absence due to her pregnancy-related disability.

49.     Because the Certified Nursing Assistant was within her probationary period at the time of her request, Defendant Absolut Orchard Park denied her request for a leave of absence in accordance with Defendants' "no leave for probationary employees" policy.

50.     Instead, Defendants terminated the Certified Nursing Assistant on or about June 4, 2015.

51.     The termination letter stated, in part, "As of today your employment with [Absolut Orchard Park] is terminated due to the fact you haven't completed your probationary period you don't qualify for any medical leave."

52.     A Licensed Practical Nurse began working for Defendants at the Absolut Orchard Park facility on or about December 10, 2014.

53.     Shortly after she was hired, the Licensed Practical Nurse underwent emergency gallbladder surgery and was taken out of work by her doctor.

54.     On or about December 30, 2014, the Licensed Practical Nurse requested an accommodation for her disability in the form of a 15-pound lifting restriction.

55.     The Licensed Practical Nurse could have performed the essential functions of her position with such an accommodation.

56.     In accordance with Defendants' policies, Defendant Absolut Orchard Park denied her request for an accommodation.

57.     The Licensed Practical Nurse then requested an accommodation in the form of a leave of absence.

58.     In accordance with Defendants' maximum leave policy, Defendant Absolut Orchard Park notified the Licensed Practical Nurse that she had to return to work within 30 days without restrictions or her employment would be terminated.

59.     Because the Licensed Practical Nurse was unable to return to work without restrictions within 30 days, Defendants terminated her employment on or about January 14, 2015.

60.     The Licensed Practical Nurse was cleared to return to work with no restrictions approximately two weeks after her termination.

61.     Defendants rehired the Licensed Practical Nurse on or about February 15, 2015, but she was treated as a "new hire" and lost her seniority and accrued benefits.

62.    In or around July 2015, the Licensed Practical Nurse injured her back and shoulder in a car accident and took a medical leave of absence to undergo physical therapy.

63.    The Licensed Practical Nurse would have been able to return to work with a lifting restriction in August 2015, but Defendants told her she could not return to work until her restrictions were lifted.  The Licensed Practical Nurse could have performed the essential functions of her position with such an accommodation.

64.    The Licensed Practical Nurse was cleared to return to work without restrictions on or about September 4, 2015.  She returned to work and Defendants terminated her employment the next day.

65.    A Case Manager began working for Defendants at the offices of Billit on or about April 16, 2012

66.    On or about April 5, 2013, the Case Manager transferred from the Billit office to the Absolut Orchard Park facility.

67.    On or about November 29, 2013, the Case Manager was diagnosed with plantar fasciitis.

68.    The Case Manager requested an accommodation in the form of returning to work with a controlled ankle motion ("CAM") boot.  She could have performed the essential functions of her position with such an accommodation.

69.    In accordance with Defendants' "no restrictions" policy, Defendant Absolut Orchard Park refused to allow the Case Manager to return to work with a CAM boot.

70.    As a result, the Case Manager took FMLA leave due to her disability.

71.    The Case Manager was unable to return to work without restrictions upon the expiration of her 12-week FMLA leave.

72.     Consequently, Defendant Absolut Orchard Park terminated the Case Manager's employment in accordance with Defendants' maximum leave policy.  The termination letter stated, in part, "as of February 24, 2014 your employment with Absolut has been terminated. The date of expiration of your FMLA was February 21, 2014 . . . . If your medical condition should change, please feel free to submit an application for employment."

## IV.    Post Offer Health Assessment and Annual Assessment

73.     Defendants require all new employees to complete a "Post-Offer Health Assessment Review" (POHA) and to undergo a medical examination on their first day of work.

74.     On the POHA form, Defendants require that employees disclose virtually their entire medical history, including "current, past or present use" of tobacco and alcohol and all prescription and non-prescription medications.

75.     The POHA lists 50 conditions, including asthma, back problems, cancer, depression, psychiatric disease, and sexually transmitted diseases, and instructs employees to identify conditions "that you <u>have now</u>, have <u>had in the past</u>, or have <u>never had</u>."

76.     Defendants further require employees to "[i]dentify any injuries you have had while working for any employer," and explain the nature of the injury, the date of the injury, medical treatment received, and time lost due to the injury.  Employees are also required to disclose "any past or present" non-occupational illness or injury.

77.     By signing the POHA, the employee agrees to submit blood and urine samples "on this date or at any future date during my employment if requested by my employer(s)," and authorizes the release of medical records "from any and all past providers on request of my employer to further evaluate my health status."

78.     Defendants also require employees to complete an Annual Assessment of Physical Status (Annual Assessment) and undergo a medical examination every year.

79.     The Annual Assessment measures the employee's blood pressure, requires the employee to list his or her prescription and non-prescription medications, and inquires whether, in the past year, the employee was "treated for" or had any "indication of" various medical conditions, including back or spinal disorders, heart disease, high blood pressure, ulcer, liver, or gall bladder disease, thyroid disease, surgery, "nervous or mental disorder," or "[a]ny other physical disorder, or deformity." Defendants further instruct the employee to "describe" any conditions identified.

## COUNT I
### Failure to Provide Reasonable Accommodation Under the ADA
### 42 U.S.C. § 1112(a) and (b)(5)(A)

80.     The Commission reasserts and incorporates by reference all the foregoing allegations.

81.     At all relevant times, Charging Party Lisa Valentin was a qualified individual with a disability.

82.     At all relevant times, the Certified Nursing Assistant was a qualified individual with a disability.

83.     At all relevant times, the Licensed Practical Nurse was a qualified individual with a disability.

84.     At all relevant times, the Case Manager was a qualified individual with a disability.

85.     Charging Party and other similarly aggrieved qualified employees with disabilities requested reasonable accommodations to enable them to perform the essential functions of their positions.

86.     Defendants failed to provide the reasonable accommodation(s) requested or any other accommodations that would have enabled Charging Party and other similarly aggrieved qualified employees with disabilities to perform the essential functions of their positions, resulting in their termination.

87.     The unlawful employment practices complained of in paragraphs 80-86 above deprived Charging Party and other similarly aggrieved qualified individuals with disabilities of equal employment opportunities and otherwise adversely affected their status as employees because of their disabilities.

88.     The unlawful employment practices complained of in paragraphs 80-86 above were and are intentional.

89.     The unlawful employment practices complained of in paragraphs 80-86 above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party and other similarly aggrieved qualified individuals with disabilities.

**COUNT II**
**Discriminatory Discharge Under the ADA**
**42 U.S.C. § 1112(a) and (b)(5)(B)**

90.     The Commission reasserts and incorporates by reference all of the foregoing allegations.

91.     Defendants terminated Charging Party and other similarly aggrieved qualified employees with disabilities because of their disabilities and/or because they required reasonable accommodations to enable them to perform the essential functions of their positions.

92.     The unlawful employment practices complained of in paragraphs 90-91 above deprived Charging Party and other similarly aggrieved qualified individuals of equal employment opportunities and otherwise adversely affected their status as employees because of their disabilities.

93.     The unlawful employment practices complained of in paragraphs 90-91 above were and are intentional.

94.     The unlawful employment practices complained of in paragraphs 90-91 above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party and other similarly aggrieved qualified individuals with disabilities.

**COUNT III**
**Use of Discriminatory Qualification Standards Under the ADA**
**No Medical Restrictions Policy**
**42 U.S.C. § 1112(a) and (b)(6)**

95.     The Commission reasserts and incorporates by reference all the foregoing allegations.

96.     During the relevant time period, Defendants maintained a "no medical restrictions" policy or practice that prohibited employees with disabilities from returning to work if they had medical restrictions.

97.     Under Defendants' "no medical restrictions" policy, employees with disabilities who have exhausted their FMLA or other approved medical leave, or who are not entitled to FMLA or other medical leave, are terminated unless they are able to work without restrictions.

98.     Defendants' "no medical restrictions" policy is a qualification standard that screens out and/or tends to screen out for employment individuals with disabilities or a class of individuals with disabilities.

99.     The effect of the practices complained of in paragraphs 95-98 above has been to deprive Charging Party and other similarly aggrieved qualified individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

100.    The unlawful employment practices complained of in paragraphs 95-98 above were and are intentional.

101.    The unlawful employment practices complained of in paragraphs 95-98 above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party and other similarly aggrieved qualified individuals with disabilities.

**COUNT IV**
**Unlawful Medical Examinations and Inquiries Under the ADA**
**42 U.S.C. § 1112(a) and (d)(3),(4)**

102.    The Commission reasserts and incorporates by reference all of the foregoing allegations.

103.    Defendants require all new employees to complete a "Post-Offer Health Assessment Review" (POHA) and to undergo a medical examination on their first day of work.

104.    Defendants also require employees to complete an Annual Assessment of Physical Status (Annual Assessment) and undergo a medical examination every year.

105.    The above-described medical examinations and disability-related inquiries are not job-related and consistent with business necessity.

106.    The effect of the practices complained of in paragraphs 102-105 above has been to inflict emotional pain, suffering, and inconvenience upon a class of employees subjected to these medical examinations and disability-related inquiries.

107.    The unlawful employment practices complained of in paragraphs 102-105 above were and are intentional.

108.    The unlawful employment practices complained of in paragraphs 102-105 above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party and other similarly aggrieved individuals subjected to these practices.

## COUNT V
### Termination on the Basis of Pregnancy Under Title VII
### 42 U.S.C. § 2000e(k) and § 2000e-2(a)(1)

109.    The Commission reasserts and incorporates by reference all of the foregoing allegations.

110.    Charging Party worked for Defendants as a food service supervisor from on or about February 4, 2015 until her termination on or about September 24, 2015.

111.    At the time of her termination, Charging Party was pregnant and Defendants knew that she was pregnant.

112.    Defendants terminated Charging Party because of her sex and pregnancy on or about September 24, 2015.

113.    The Certified Nursing Assistant worked for Defendants from on or about April 22, 2015 until her termination on or about June 4, 2015.

114.    At the time of her termination, the Certified Nursing Assistant was pregnant and Defendants knew she was pregnant.

115.    Defendants terminated the Certified Nursing Assistant because of her sex and pregnancy on or about June 4, 2015.

116.    The effect of the practices complained of in paragraphs 109-115 above has been to deprive Charging Party, the Certified Nursing Assistant, and other similarly aggrieved

pregnant employees of equal employment opportunities and otherwise adversely affect their status as employees because of their sex and pregnancy.

117.     The unlawful employment practices complained of in paragraphs 109-115 above were and are intentional.

118.     The unlawful employment practices complained of in paragraphs 109-115 above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party, the Certified Nursing Assistant, and other similarly aggrieved pregnant employees.

## COUNT VI
### Failure to Accommodate Women Affected by Pregnancy, Childbirth, or Related Medical Conditions Under Title VII
### 42 U.S.C. § 2000e(k) and § 2000e-2(a)(1)

119.     The Commission reasserts and incorporates by reference all the foregoing allegations.

120.     Charging Party Lisa Valentin was pregnant in September 2015.

121.     On or about September 24, 2015, Charging Party requested accommodations for her pregnancy-related medical restrictions in the form of lifting restrictions and/or a medical leave of absence.

122.     On or about September 24, 2015, Defendants denied Charging Party's request for an accommodation because of her sex and pregnancy, and instead terminated her employment.

123.     The Certified Nursing Assistant was pregnant in May 2015.

124.     On or about May 27, 2015, the Certified Nursing Assistant requested accommodations for her pregnancy-related medical restrictions in the form of a lifting restriction and/or a medical leave of absence.

125.    On or about June 4, 2015, Defendants denied the Certified Nursing Assistant's request for an accommodation because of her sex and pregnancy, and instead terminated her employment.

126.    In an e-mail to Defendant AFM/Billit's Benefits Coordinator concerning the Certified Nursing Assistant's request for an accommodation, Defendant Absolut Orchard Park's Human Resources Director stated, in part: "Why do all of these young girls try to get jobs when they are pregnant?"

127.    During the relevant time period, Defendants had a policy or practice of providing light/modified duty work or other accommodations to employees who were injured at work, which, upon information and belief, constituted a significant percentage of Defendants' nonpregnant workers seeking such accommodations.  Those workers were similar in their ability or inability to work to Charging Party, the Certified Nursing Assistant, and other similarly aggrieved pregnant employees.

128.    During the relevant time period, Defendants denied light/modified duty work or other accommodations to its pregnant employees who were not injured on the job.

129.    Indeed, Defendant Absolut Orchard Park's Administrator told a pregnant employee in or around May 2015 that Defendants "do not make accommodations for pregnancy."

130.    During the relevant time period, Defendants had a formal Transitional Return To Work Program ("TRTW") that identified tasks workers on light/modified duty could perform.

131.    Defendants accommodated a significant number of non-pregnant employees in the TRTW program.  Such non-pregnant employees were similar in their ability or inability to work as Charging Party, the Certified Nursing Assistant, and other pregnant workers.

132.    During the relevant time period, Defendants had a policy or practice of providing leave to probationary employees injured on the job.

133.    During the relevant time period, Defendants denied leave to pregnant probationary employees who were not injured on the job.

134.    Defendants refused to provide leave to the Certified Nursing Assistant and other similarly aggrieved pregnant probationary employees because of their pregnancy; instead, Defendants terminated their employment.

135.    During the relevant time period, Defendants had a policy or practice of providing extended leave to employees who were injured on the job.

136.    Indeed, during the relevant time period, Defendants provided job-protected leaves of up to two years for employees injured on the job.

137.    During the relevant time period, Defendants denied additional or extended leave to pregnant employees who were not injured on the job.

138.    Defendants refused to provide additional leave to Charging Party and other similarly aggrieved pregnant employees because of their pregnancy; instead, Defendants terminated their employment.

139.    The effect of the practices complained of in paragraphs 119-138 above has been to deprive Charging Party, the Certified Nursing Assistant, and other similarly aggrieved pregnant workers of equal employment opportunities and otherwise affect their status as employees because of their sex and pregnancy.

140.    The unlawful employment practices complained of in paragraphs 119-138 above were and are intentional.

141.     The unlawful employment practices complained of in paragraphs 119-138 above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party, the Certified Nursing Assistant, and other similarly aggrieved pregnant workers.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practices that violate the ADA.

B.      Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practices that violate Title VII, as amended by the PDA.

C.      Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from denying pregnant workers accommodations made available to other employees similar in their ability or inability to work.

D.      Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities, and that eradicate the effects of their past and present unlawful employment practices described herein.

E.      Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for pregnant workers, and that eradicate the effects of their past and present unlawful employment practices described herein.

F.      Order Defendants to make whole Lisa Valentin, the Certified Nursing Assistant, the Licensed Practical Nurse, the Case Manager, and other individuals aggrieved by Defendants'

unlawful employment practices by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to reinstatement or frontpay.

G.      Order Defendants to make whole Lisa Valentin, the Certified Nursing Assistant, the Licensed Practical Nurse, the Case Manager, and other individuals aggrieved by Defendants' unlawful employment practices by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein, including job search expenses and medical expenses, in amounts to be determined at trial.

H.      Order Defendants to make whole Lisa Valentin, the Certified Nursing Assistant, the Licensed Practical Nurse, the Case Manager, and other individuals aggrieved by Defendants' unlawful employment practices by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described herein, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

I.      Order Defendants to pay Lisa Valentin, the Certified Nursing Assistant, the Licensed Practical Nurse, the Case Manager, and other individuals aggrieved by Defendants' unlawful employment practices punitive damages for their malicious and reckless conduct as described above, in amounts to be determined at trial.

J.      Grant such further relief as the Court deems necessary and proper in the public interest.

K.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: September 17, 2018
        Buffalo, New York


JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney
jeffrey.burstein @eeoc.gov

NORA CURTIN
Supervisory Trial Attorney
nora.curtin@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004

/s/      Elizabeth Fox-Solomon
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Buffalo Local Office
Olympic Towers
300 Pearl Street, Suite 450
Buffalo, New York 14202
(716) 431-5010
elizabeth.fox-solomon@eeoc.gov